**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------X

**Docket No. 22-cv-7405** (VSB)

CORETTA RODDEY,

*Plaintiff*,

-against-

KPMG, LLP, SABRINA DONNELLY, In Her Individual And Official Capacities, JONATHAN EDGERTON In His Individual and Official Capacities, JULIE MOLITOR, In Her Individual And Official Capacities, JONATHAN WYATT, In His Individual And Official Capacities, YVONNE GARCIA, In Her Individual And Official Capacities, TIMOTHY PHELPS, In His Individual And Official Capacities, and ALLISON SUMROW, In Her Individual And Official Capacities,

*Defendants*.

-----------------------------------------X

**PLAINTIFF 'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS & MOTION FOR SUMMARY JUDGMENT**

**PHILLIPS & ASSOCIATES,**
**Attorneys at Law, PLLC**
Gregory Calliste, Jr.
Alexandria Jean Pierre
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, NY 10006
T: (212) 248 - 7431
F: (212) 901 - 2107
gcalliste@tpglaws.com
ajean-pierre@tpglaws.com

# TABLE OF CONTENTS


TABLE OF AUTHORITIES....................iv

PRELIMINARY STATEMENT....................1

STATEMENT OF FACTS....................1

A. Individual Defendants' Direct Roles in Causes of Action (As per the Amended Complaint)....................1

1. Defendant Sabrina Donnelly's Direct Role....................2

2. Defendant Allison Sumrow's Direct Role....................2

3. Defendant Jonathan Edgerton's Direct Role....................3

4. Defendant Julie Molitor's Direct Role....................4

5. Defendant Jonathan Wyatt's Direct Role....................4

6. Defendant Yvonne Garcia's Direct Role....................5

7. Defendant Timothy Phelps' Direct Role....................5

8. Claims Centrally Related to All Individual Defendants....................6

B. Relevant Jurisdictional Allegations (Taken directly from Plaintiff's Amended Complaint ¶¶12-26)....................6

LEGAL ARGUMENTS....................10

A. Motion To Dismiss for Lack of Personal Jurisdiction

I. PLAINTIFF PROPERLY ALLEGED, AND CAN ESTABLISH JURISDICTION OVER INDIVIDUAL DEFENDANTS....................11

1. 302(a)[1]....................11

2. 302(a)[3]....................17

a. Individual Defendants Regularly Do Business in New York....................18

3. Subjecting Individual Defendants to Jurisdiction is Consistent with Due Process....................19

II. PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS ARE PROPER AS THE ALLEGED DISCRIMINATORT AND RETALIATORY CONDUCT OCCURRED IN NY & *THE IMMPACT* THEREOF WAS FELT BY PLAINTIFF IN NY....................21

III. SUMMARY JUDGMENT IS INNAPPROPRIATE AS DEFENDANTS' DECLARATIONS DO NOT ELIMINATE RELEVANT ISSUES OF FACT....................23

IV. DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST INDIVIDUAL DEFENDANTS IS PREMATURE WITHOUT FURTHER DISCOVERY ........ 25

V. SHOULD THE COURT REQUIRE FURTHER ALLEGATIONS RELATED TO JURISDICTION, THE COURT SHOULD ALLOW FURTHER AMENDMENT OF THE AMENDED COMPLAINT........25

CONCLUSION… ........ 26

# TABLE OF AUTHORITIES

## Cases

A. Millner Co., Inc. v. Noudar, Lda., 24 A.D.2d 326, 331 (N.Y. App. Div. 1st Dept. 1966)....................13

American BankNotc Corp. v Daniele, 45 A.D.3d 338,340 (1st Dep't 2007).......................................... 11

Asahi Metal lndus. Co. v. Superior, 480 U.S. 102, 113-14, 107 S.Ct. 1026 (1987)................................ 20

Baskett v. Autonomous Research LLP, 2018 WL 4757962, at *11 (S.D.N.Y. 2018)........... 11, 14, 15, 21

Bass v. World Wrestling Fed'n Entm't, 129 F. Supp. 2d 491(E.D.N.Y. 2001)...................................... 21

Big Apple Pyrotechnics & Multimedia, Inc. v. Sparktacular, Inc.,
2007 U.S. Dist. LEXIS 17163 (S.D.N.Y. 2007)...........................................................................14

BHP Trading (UK) Ltd. v. De Sea 1991 WL 198747, at *5 (S.D.N.Y.1990)....................................25

Bochner v. Heise, 410 F. Supp. 2d 228,238 (S.D.N.Y. 2006)..........................................................20

Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163–64 (2d Cir. 2010) ..............11, 19, 20, 21

D'Anzieri v. Harrison Glob. LLC, 2022 U.S. Dist. LEXIS 217780 (S.D.N.Y. 2022) ........................ 14, 21

Daventree Ltd. v. Republic of Azerbaijan, 349 F.Supp.2d 736, 761 (S.D.N.Y. 2004)...........................24

Deutsche Bank Sec., Inc. v. Montana Bel., 21 A.D.3d 90, 93-94 (1st Dep't 2005)................................. 12

Deutsche Bank, Inc. v. Montana Bd., 7 N.Y.3d 65, 71, (2006)........................................................ 15, 16

Doe v. McAdam Fin. Grp. LLC, 2022 U.S. Dist. LEXIS 150555 (S.D.N.Y. 2022) ...............................16

DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 85 (2d Cir. 2001)................................................... 17, 18

Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 169 (2d Cir. 2015).................................................20

Fischbarg v. Doucet, 9 N.Y.3d 375,380 (2007)......................................................................... 13

Grand River Enterprises Nations, Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005)........................... 11, 12

Gundlach v. IBM Corp., 2012 WL 1520919, at *11 (S.D.N.Y. 2012)............................................24, 25

Hollins v. U.S. Tennis Ass'n, 469 F. Supp. 2d 67, 77 (E.D.N.Y. 2006) ........................................... 17, 18

Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC,
470 F. Supp. 2d 345, 358 (S.D.N.Y. 2007) ............................................................. 11, 14, 15, 21

International Shoe Co. v. Washington, 326 U.S. 310,316, (1945) ......................................................... 19

Kiobel v. Royal Dutch Petroleum Co., 2009 WL 3817590, at *4 (S.D.N.Y. 2009)................................ 24

Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 43-44 (N.Y. 1988)................................................... 13

Kumar v. Opera Sols. LLC., 2021 U.S. Dist. LEXIS 185705, at *8 (S.D.N.Y. 2021)............................ 14

Launer v. Buena Vista Winery, Inc., 916 F. Supp. 204, 211–12 (E.D.N.Y. 1996) ..................................18

Lebel v. Tello, 272 A.D.2d 103, 103-04 (1st Dep't 2000)........................................................................12

Litton v Avomex, Inc, at *6 (N.D.N.Y. 2010) ........................................................................................ 17

Muraco v. Ferentino, 247 N.Y.S.2d 598,601 (N.Y. Sup. Ct. 1964) ....................................................... 12

NY v. Continental Vitamin Corp., 254 F. Supp. 845, 847 (S.D.N.Y. 1966)...........................................12

O'Brien v. Hackensack Univ. Med. Ctr., 305 A.D.2d 199, 200 (1st Dep't 2003)..................................... 12

Otterbourg v. Shreve City Apartments, Ltd. Houston & Rosen, P.C. v Shreve City Apartments.
147 A.D.2d 327,331 (1st Dep't 1989) .....................................................................................................12

Penguin Grp. (USA) Inc. v. Am. Buddha, 16 N.Y.3d 295, 302 (2011).................................................... 17

Peterson v. Spartan Industries, Inc., 33 N.Y.2d 463,466 (1974) ..............................................................11

Rinaldi v. NICE, Ltd., 2021 U.S. Dist. LEXIS 40822 at *8 (S.D.N.Y. 2021)......................................... 21

Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societa Per Azioni,
549 F. Supp.2d 549 (S.D.N.Y. 2008) .............................................................................................. 22, 23

Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.,
156 F. Supp. 3d 348, 357 (E.D.N.Y. 2016)............................................................................................ 19

Simonson v. International Bank, 200 N.E.2d 427, 439 (N.Y. 1964).........................................................12

S.M.Fabrikant & Sons v. Adrianne Kahn, Inc., 533 N.Y.S.2d 866, 868 (1st Dept. 1988) ......................... 13

Sole Resort SA. de C.V. v. Allure Resort Mgmt., 450 F.3d 100, 103 (2d Cir. 2006) ...................11, 12, 13

Sorrentino v. Citicorp, 302 A.D.2d 240, 240, 755 N.Y.S.2d 78 (1st Dep't 2003) ...................................21

Stamper v. Tech, Inc. v. 3DCD, LLC, 2012 WL 12875287, at *4 (W.D.N.Y. 2012) ..............................19

Steuben Foods, Inc. v. Morris, 2002 WL 1628061, at *3 (W.D.N.Y. 2002)........................................... 15

Taperell v. Tegan Lighting, Inc., 2019 U.S. Dist. LEXIS 20293
(E.D.N.Y. 2019) .......................................................................................................................................21

Tebbenhoff v. Elec. Data Sys. Corp., 2005 U.S. Dist. LEXIS 29874, at *15 (S.D.N.Y. 2005) ................22

Thorsen v. Sons of Norway, 996 F. Supp. 2d 143, 155 (E.D.N.Y. 2014) .......................................... 15, 19

Twisted Records v. Rauhofer, 2005 WL 517328 (S.D.N.Y. 2005) ........................................................ 25

Uebler v. Boss Media, AB, 363 F. Supp. 2d 499, 506 (E.D.N.Y. 2005) ................................................ 25

Ware v. L-3 Vertex Aerospace, LLC, 833 F. App'x 357, 359 (2d Cir. 2020) .......................................... 21

Williams v. Preeminent Protective Servs., Inc., 81 F. Supp. 3d 265, 271-72 (E.D.N.Y. 2015)................ 16

**Statutes and Rules**

F.R.C.P Rule 15(a) ............................................................................................................... passim

C.P.L.R. § 302(a)(1) ............................................................................................................. passim

C.P.L.R. § 302(a)(2) ............................................................................................................. passim

C.P.L.R. § 302(a)(3) ............................................................................................................. passim

**PRELIMINARY STATEMENT**

Plaintiff provides this Memorandum in Opposition to Defendants' Motion to Dismiss, dated December 20, 2022. Essentially, the Court's determination will depend on whether the Court believes that Individual Defendants, who were all managers over Plaintiff, and agents of their Principal, Defendant KPMG, could be held personally liable and subjected to litigation in NY for the discriminatory and retaliatory conduct against Plaintiff, which are alleged in the Amended Complaint. Plaintiff asserts that Individual Defendants should be subject to specific jurisdiction in New York. Defendant KPMG is an out of state corporation with a main office in New York. For this reason, Defendant KPMG did not move to have itself dismissed from this matter because that application would be futile.

For obvious public policy reasons, Defendants' application herein would lend itself to precedent wherein large international corporations, such as KPMG, would intentionally seek to avoid liability of its managing agents for discriminatory practices against KPMG employees (such as Plaintiff) by routinely assigning resident employees to out-of-State (or even out-of-country) managers and supervisors knowing that said managers/supervisors would be shielded from liability if they violate State employment laws. This should not become the precedent in this State/District, wherein corporate defendants can avoid (less stringent) employment laws of NY City and State by assigning its management to remote locales or countries wherein they would not have to adhere to NY laws in the supervision of their NY employees (such as Plaintiff herein).

## I. STATEMENT OF FACTS RELEVANT TO JURISDICTION

Plaintiff respectfully refers the Court to the Factual Allegations in the Amended Complaint for details concerning the underlying facts in this Case. Below, Plaintiff extracts facts from the Complaint relevant to the jurisdictional arguments made by Defendants in their motion (*see Exhibit A*).

### *A.* INDIVIDUAL DEFENDANTS' DIRECT ROLES IN CAUSES OF ACTION
***(As Per the Amended Complaint)***

With regard to each Individual Defendant in this case, it is important to mention from the outset, that these individuals all directly manage Defendant KPMG's **Transformation Delivery ('TD") Group**, which has a headquarters in NY City. Individual Defendants also addressed Human Resource issues in the NY office. Plaintiff was assigned to this NY office and **was not** the only TD employee at said location. As

such, it necessarily follows each Defendant routinely supervised other employees in the NY office alongside Plaintiff **(Exh. B, Roddey Decl. ¶¶26-27).** Plaintiff's personnel matters could not have been the only personnel matters that each Defendant addressed in the NY office. Further discovery will reveal continuous and systematic contacts of each Defendant in KPMG'S TD office in New York.

**1.** **Defendant Sabrina Donnelly** is a Financial Services Resource Manager at DEFENDANT KPMG. In her role, DEFENDANT DONNELLY was PLAINTIFF'S manager and was able to affect the terms and conditions of PLAINTIFF'S employment. **(Exh. A, Amended Complaint, ¶65)** Donnelly was Plaintiff's main manager and was responsible for "proposing" Plaintiff to different projects to get Plaintiff assigned to work. (*Id*. ¶¶81-82, 84-87, 95-96, 97) Plaintiff could not be assigned to a project unless her managers, including Defendants Donnelly, approved and supported Plaintiff. (*Id*. ¶111)

Donnelly falsely advised Plaintiff that she was trying to get Plaintiff placed on available projects. However, Defendant Donnelly did not actually propose Plaintiff for any accounts as she (falsely) promised. (*Id*. ¶98-99) Donnelly was treating Plaintiff differently than Plaintiff's non-African American Coworkers. (*Id*. ¶100-101) Donnelly did not respond to Plaintiff's concerns. (*Id*. ¶87)

Plaintiff complained to KPMG about Donnelly because of Donnelly's lack of transparency with regard to being selected for, and placed, on projects (*Id*. ¶89) On October 14, 2021, Plaintiff complained to KMPG'S Human Resources Business Partner, Betty Purcell about Defendant Donnelly's discriminatory conduct and about the fact that Defendant Donnelly stopped assigning Plaintiff to accounts following Plaintiff's complaints. (*Id*. ¶¶134-135) Plaintiff continued to complain to HR about Donnelly's conduct, which appeared discriminatory/retaliatory and designed to sabotage Plaintiff's employment. (*Id*. 181)

In retaliation for Plaintiff's complaint, Donnelly stopped sending important documents and information to Plaintiff, which would have assisted Plaintiff in getting placed into available projects/roles (¶¶145-147) Plaintiff's coworkers and team members were not being treated this was by Donnelly. (*Id*.)

**2.** Like Defendant Donnelly, **Defendant Allison Sumrow** is a Financial Services Resource Manager at DEFENDANT KPMG. In her role, Defendant Sumrow was one of Plaintiff's managers and was able to affect the terms and conditions of Plaintiff's employment. (*Id*. ¶71) Defendant Sumrow was one of Plaintiff's direct managers alongside Defendant Donnelly and was, in part, responsible for denying

Plaintiff's assignments and for creating the retaliatory work environment Plaintiff was subject to.

Plaintiff complained to KPMG about Defendant Sumrow's and Donnelly's conduct, their lack of equal treatment toward Plaintiff, and about and their lack of transparency (*Id*. ¶88). Plaintiff also complained directly to Defendant Sumrow about discriminatory practices on the team and at KPMG. (¶¶126-131) Plaintiff complained to Defendant Sumrow that Plaintiff, ***"was the only African American female"*** manager in TD Financial Services based in NY and wanted ***"to be treated fairly"*** with the "*same opportunities given to other managers."* (¶127) Plaintiff complained to Sumrow about ***"bias."*** (*Id*. ¶128)

Defendant Sumrow did nothing in response to Plaintiff's complaints and did not forward them to HR or Ethics for review. Instead, Defendant Sumrow joined-in on the team's efforts to stymie Plaintiff's complaints and future professional opportunities at KPMG. (*Id*. ¶131) Defendant Sumrow, then began to falsely assert that Plaintiff was being submitted for different projects, which was untrue, and began to retaliate against Plaintiff in direct response to Plaintiff's complaints (¶¶132-133).

**3.** **Defendant Jonathan Edgerton** is a Principal of Operations & Compliance Risk at Defendant KPMG. Defendant Edgerton was able to affect the conditions of Plaintiff's employment. (*Id*. ¶66)

Johnathan Edgerton was Plaintiff's supervisor, but was above Defendant Donnelly in the chain-of-command. Plaintiff complained to Edgerton about discrimination and retaliation and received no response(s). (*Id*. ¶¶86-87) Plaintiff continued to raise concerns about the Stifel project and the fact that she was not being fairly presented or considered for projects by Defendant Donnelly and Sumrow. (*Id*. ¶115)

Defendant Edgerton reprimanded Plaintiff by complaining to individuals (including Carl Carande, Head of Advisory Services and HR) that were above Edgerton in the chain-of-command, in an attempt to dissuade Plaintiff from making any further complaints. (*Id*. ¶¶121-123) After Plaintiff began making complaints to HR, Defendant Edgerton falsely advised Plaintiff that she would be assigned to the Goldman Sachs account/project. However, Edgerton's promise was false, and Plaintiff never received any paperwork from Edgerton related to this alleged assignment. (*Id*. ¶¶142-146). This then caused Plaintiff to complain to HR about Edgerton's discriminatory conduct against Plaintiff, which appeared to be retaliatory as well, that Edgerton was not being truthful with Plaintiff about assigning Plaintiff to available projects. (*Id*. ¶168)

**4.** **Defendant Julie Molitor** is a Human Resources Manager and/or Representative at KPMG.

Defendant Molitor had the ability to affect the terms and conditions of Plaintiff's employment. (Id. ¶67) Defendant Molitor is the HR Representative that took and (allegedly) investigated Plaintiff's multiple complaints of discrimination, retaliation, and diversity practices at KPMG. Plaintiff complained directly to Defendant Molitor about the conduct of Defendants Donnelly, Sumrow, Edgerton. (Id. ¶136)

Defendant Molitor received Plaintiff's complaint, which Plaintiff made to another manager (Ms. Richards) about diversity practices. In response, Molitor advised Plaintiff that Plaintiff "could leave KPMG if she was unhappy and did not want to remain with KPMG" and began subtly threatening Plaintiff's employment (Id. ¶¶169- 172) Plaintiff trusted Molitor, as a leader in HR, to assist Plaintiff with her issues. Instead, Molitor joined-in and refused to prevent retaliation against Plaintiff. (Id.) Plaintiff felt that she was being ostracized from her group following her complaints and Plaintiff asked Defendant Molitor to assist Plaintiff in trying to have a better professional relationship with her team. (¶185) Plaintiff also complained to Molitor about being excluded from team meetings and events. (¶187) Plaintiff was concerned that she was being retaliated against for engaging in protected activity and made her concerns clear to Defendant Molitor (¶185-191)

Within a day of one of Plaintiff's last complaints about retaliation to Molitor/HR, Plaintiff was wrongfully terminated in direct retaliation for engaging in protected activity. (¶¶185-193)

**5.** **Defendant Jonathan Wyatt** is a Managing Director of Human Resources at KPMG. Defendant Wyatt had the ability to affect the terms and conditions of Plaintiff's employment. (Id. ¶68) Defendant Wyatt was above Defendant Molitor in the chain-of-command in Human Resources at KPMG.

Within an hour of one of Plaintiff's last complaints about retaliation to Defendant Molitor/HR, Plaintiff was wrongfully terminated in an act of retaliation. (Id. ¶¶185-193) Plaintiff's termination would become effective two weeks later on, February 11, 2022.

While Plaintiff was still employed and immediately following learning of her termination, Plaintiff contacted Defendant Wyatt, advised him of the retaliatory termination (as the termination came within a day of one of Plaintiff's complaints and shortly after the determination denying the veracity Plaintiff's other complaints). (Id. ¶¶216-222). Defendant Wyatt responded to Plaintiff's complaint by outright denying same, without investigating. Defendant Wyatt did not forward Plaintiff's concerns to anyone for further

investigation before denying Plaintiff's complaint and refusing to take any further action. (*Id*. ¶¶220-222)

Defendant Wyatt was directly involved in the decision to terminate Plaintiff within an hour after Plaintiff made a complaint to HR concerning retaliation at KPMG.

**6.** **Defendant Yvonne Garcia** is a manager and/or In-House Counsel at KPMG. Defendant Garcia was involved in an (alleged) investigation that took place following a complaint made by PLAINTIFF and was directly involved in Plaintiff's subsequent termination. (*Id*. ¶69) After Plaintiff's discrimination and Diversity complaints were sent to KPMG'S Ethics and Compliance office, Plaintiff's complaints were given to Defendant Garcia for (alleged) investigation. (*Id*. ¶¶173-175)

After Plaintiff had her initial conversation with Defendant Garcia, Between November 22, 2021, and December 20, 2021, Plaintiff followed up with Defendant Garcia on several occasions and complained that she was being blocked from being placed on financial services engagements (*Id*. ¶175-176). Plaintiff complained to Defendant Garcia about the ongoing hostile work environment, isolation by her team, and about Defendants' continued refusal to place her on assignments following her complaint(s). Defendant Garcia did nothing in response to Plaintiff's complaints. (*Id*. ¶¶178-184) Defendant Garcia did not respond to any of these complaints. That is until, Plaintiff made another retaliation complaint on January 27, 2022. Following this retaliation complaint, Defendant Garcia responded to all of Plaintiff's previous complaints at one time and advised Plaintiff that none of her complaints were substantiated. (*Id*. ¶¶193) The very next day, Plaintiff received a meeting request from Defendant Phelps and during that meeting, Plaintiff was advised that she was being terminated (*Id*. ¶¶194-200)

**7.** **Defendant Timothy Phelps** is a Partner in Defendant KPMG's Department of Professional Practice (DPP). Defendant Phelps is a manager that had the ability to affect the terms and conditions of Plaintiff's employment and was responsible for the termination of Plaintiff.

Within 24 hours of one of Plaintiff's retaliation complaints, and after all of Plaintiff's pending complaints were extinguished at one time, Defendant Phelps contacted Plaintiff and wrongfully terminated her employment at KPMG. (*Id*. ¶¶195-200) Defendant Phelps is partly responsible for the retaliatory termination of Plaintiff (*id*.)

**8.** **Claims Centrally Related To All Individual Defendants:**

Causes of Action 7 (¶¶343-362) and 10 (Id. ¶¶405-426) both outline and allege that these individual Defendants are all individually liable under the NY State and NY City Human Rights laws for: **[1]** Each aiding, abetting, inciting, compelling, and coercing the discriminatory and retaliatory conduct of their principal, Defendant KPMG (id. ¶345); **[2]** Each being directly and personally involved in the discriminatory and retaliatory conduct against Plaintiff (Id. ¶346); **[3]** Each being directly involved in the hostile retaliatory work environment faced by Plaintiff (¶¶347-350); **[4]** Ignoring Plaintiff's ongoing complaints of discrimination and retaliation, while further retaliating against Plaintiff (Id. ¶¶351-352); **[5]** Each Individual Defendant was acting pursuant to their authorities as agents of DEFENDANT KPMG (Id. ¶355) **[6]** and utilizing their management positions at KPMG to subject Plaintiff to the discriminatory, retaliatory and hostile environment alleged in the Amended Complaint. (Id. ¶¶ 356-359) Each Individual Defendant engaged in discriminatory and/or retaliatory conduct directly against Plaintiff.

**B. RELEVANT JURISDICTIONAL ALLEGATIONS**
**(*taken directly from Plaintiff's Amended Complaint ¶¶12-62*):**

KPMG's NY Office, located at 560 Lexington Avenue, New York, NY, was the situs of each and every such event and allegation. Each and every Individual Defendant herein communicated and interacted with Plaintiff about her employment and discrimination complaints via KPMG'S NY office, wherein Plaintiff was based. All of the discriminatory and retaliatory actions of the Defendants could/would not have occurred but for Plaintiff's employment in KPMG'S NY office, wherein Plaintiff was based. **(Exh A. Complaint, ¶¶19-20).**

Each and every Defendant in this matter had to avail themselves of the laws, policies and facilities of KMPG in NY in order to receive and address Plaintiff's concerns about her employment, as alleged throughout the Amended Complaint. Plaintiff was hired as a Manager, TD in Consulting, as was based and stationed in KPMG's above-described NY Office. Plaintiff was assigned to no other location to work at KPMG. Indeed, though KMPG had a major office location in the Atlanta, State of Georgia, closer to where Plaintiff resided at the time of her hire, Plaintiff was specifically and unequivocally assigned to KPMG's NY office only. **(Exh A. Complaint, ¶¶22-24).**

Plaintiff had no office in Georgia, where she lived at the time of her hire, was never offered same, and was specifically directed to her NY City based office location for all inquiries and matters related to

her employment. Plaintiff had no managers/supervisors, assignments/tasks, employees, subordinates, personnel department or HR representatives, equipment, security clearance, office, remote office, access, or anything else related to her employment at any other KPMG location other than KPMG's NY City office. Plaintiff did have managers/supervisors, assignments/tasks, subordinates, personnel representatives, equipment, office access, remote office access, security clearance, a badge/ID, a workstation, in KPMG's NY office. (Id. ¶¶25-27).

In her offer letter from KPMG, dated 9/16/2021, the CEO of KMPG, Paul Knopp, wrote Plaintiff stating, *inter alia*: "***Congratulations! On behalf of KPMG, LLP., we are pleased to offer you the position of Manager, TD in Consulting in our NY – 560 Lexington office, effective September 27, 2021***." Plaintiff's offer letter continued: "*As discussed during the interview process,* ***our business needs require that the position be located in the New York, NY office. Accordingly, by March 27, 2022, you must relocate your residence to the NY City area and be able to work full time in the NY City area***, as needed for business purposes as determined by KPMG, when not travelling on firm business or working at a client location." [*emphasis added*]. Though Plaintiff was allowed to work remotely initially after her hire, as a condition of her employment, Plaintiff was required to fully relocate to the State of NY and had no other option. (Exh A. Complaint, ¶¶28-30).

After she was hired, Plaintiff was directed to physically report to KPMG'S NY Office to onboard and to obtain her credentials, badges, identification, onboarding materials, equipment, remote access information, business cards, etc. Plaintiff was issued a KPMG company laptop computer (with peripherals), a company headset, security cords and codes, a laptop bag, screen protectors, and a "Cisco Unity" phone number to remotely access, communicate and interact, specifically, with the NY office and with KPMG's clients. Plaintiff's Cisco Unity access allowed Plaintiff to send and receive electronic messages, voice messages, text messages, as well as make phone calls and communicate with her coworkers and clients, remotely, but directly through her base office in NY City. (Exh A. Complaint, ¶¶31-33).

**Though KPMG had a major office location in Georgia where Plaintiff resided at the time she was hired, Plaintiff could not report to that location for onboarding, orientation or to perform the duties of her job**. Plaintiff was compelled to report, exclusively, to the NY office for any and all

employment related issues. Plaintiff 's badge, ID and business cards all referenced KPMG's "NY 560 Lexington" location and granted her access to same. Plaintiff did not have KPMG badges, identification or clearance to enter any other KPMG location. (Exh A. Complaint, ¶¶34-35). **No witnesses or evidence in this case is located in the State of Georgia.**

When Plaintiff attempted to go to her office in NY, Plaintiff was specifically advised that she should not physically visit KPMG'S NY office due to KPMG's pandemic protocols. (Exh A. Complaint, ¶36). Nevertheless, Plaintiff visited the NY office on two occasions **(Exh. B, Roddey Decl. ¶¶21-22) .**

Plaintiff was given a NY telephone number as an employee of KPMG, which was (212) 909-5009. As an employee of KPMG's NY office, Plaintiff's email signature, which appeared on all of Plaintiff's email communications when Plaintiff engaged in KPMG's business, referenced Plaintiff as a NY KPMG employee, and read: **Coretta Roddey, Transformation Delivery, PMG Ignition | Financial Services | 560 Lexington Ave., New York, NY 10022, Office (212) 909-5009.** (Exh A. Complaint, ¶¶37-42).

Plaintiff's paychecks and paystubs all referenced and specified that Plaintiff was a "New York" employee, assigned to KPMG's "NY Location" and/or "NY – 560 Lexington." There was no reference thereon to any other KPMG location other than "NY City." Plaintiff's paychecks and paystubs all referenced and specified that Plaintiff's "Department" was "US176 – NY City." Plaintiff's paychecks and paystubs all indicated that Plaintiff had NY State taxes and fees deducted from Plaintiff's semimonthly payments, including but not limited to "NY FLI/EE" taxes (NY Paid Family Leave) and "NY OASDI/EE" taxes. Plaintiff had, and paid, no such taxes in any other state(s) as an employee at KPMG. (Id.). **When Plaintiff was wrongfully terminated from KPMG, Plaintiff began receiving NY State Unemployment Insurance payments from the NY State Department of Labor. Plaintiff received no [un]employment benefits, at all, from the State of Georgia or any other State.** (*Id*. ¶43) **For obvious reasons, the "situs of the injuries" sustained by Plaintiff is NY because the unemployment benefits Plaintiff received due to her wrongful termination were based in, and came from, NY State.**

Any and all work communications, work related issues, complaints of discrimination/retaliation made by Plaintiff, human resources and personnel inquiries, Plaintiff's hiring and termination from KPMG, contacts between Plaintiff and all Defendants herein, were made to or by Plaintiff through her office, phone

number and email address via Plaintiff's NY City office. Each and every action taken by Plaintiff in furtherance of her employment (including her complaints of discrimination and retaliation) as alleged herein were taken pursuant to her employment based in KPMG's NY office. (Exh A. Complaint, ¶¶44-45).

Though Plaintiff initially worked remotely out of state, it was known and obvious to Defendants that Plaintiff's employment and duties were based in no other place/state other than NY City. Plaintiff could not accept employment at KPMG, or perform the duties of her employment, without KPMG's NY City office **(Plaint. 56.1 ¶¶6, 22).** If Plaintiff declined to work out of KPMG's NY City location, Plaintiff would not have been offered the job. She had no option but to submit herself to KPMG's NY City office as a condition precedent to her employment. Defendants were aware that Plaintiff was required to submit herself to KPMG's NY City office and was designated as a NY City employee. (Exh A. Complaint, ¶¶46-48).

Accordingly, as for all allegations in this Amended Complaint, **Individual Movant Defendants** were all aware that their interactions with Plaintiff alleged herein, though taking place remotely, necessarily required them each to avail themselves to KPMG's NY office. **Individual Movant Defendants** were all aware that their interactions with Plaintiff alleged herein, though taking place remotely, necessarily required them each to reference, comply and act consistently with the employment laws of the State and City of New York. As Plaintiff was based in New York, **Individual Movant Defendants** could not rely on the employment laws of the state(s) wherein they were physically present/located, to manage and supervise Plaintiff or to address Plaintiff's employment concerns. (Exh A. Complaint, ¶¶49-51).

Each Defendant had to act consistently with the Laws of the State of NY when dealing with Plaintiff's employment. In interacting with Plaintiff as a NY based employee, each individual Defendant, as a matter of necessity, had to call, email, communicate and make decisions regarding Plaintiff by availing themselves in the State/City of New York, in KPMG's NY office. Corporate Defendant KPMG unequivocally knew that each Defendant herein was required to avail themselves of the NY Office, the laws of New York, and KMPG's NY based employment policies, in order to manage and supervise Plaintiff, who was based in New York. Defendant KPMG knew that, by causing and requiring its out-of-state human resources and managers (including Individual Defendants) to avail themselves in the State of NY, these employees could be sued for employment related matters in New York. (Exh A. Complaint, ¶¶52-55).

Each Defendant herein, individually and collectively, transacted business within the State of New York, on multiple occasions, with regard to Plaintiff and other employees in the NY office location. The claims asserted against each Defendant herein arose, directly, from their business activities and interactions with Plaintiff in or through KPMG's NY office. Each Defendant's activities as alleged herein were purposefully intended and aimed to take place in New York, in or through KPMG's NY City office. Each Individual Defendant engaged in ongoing transactions with Plaintiff, in furtherance of all Parties employments at KPMG, which included, but were not limited to, telephone calls, emails, meetings (virtually and in person) and/or other communications, and business decisions purposefully directed into the State of NY and/or NY City. (Exh A. Complaint, ¶¶56-59).

There is a direct nexus between the business transacted by each Defendant with/toward Plaintiff and the causes of action sued upon herein, and there is a substantial relationship between these transactions and claims asserted by Plaintiff against Individual Defendants. Each Defendant knew, should have known and could foresee that their substantial interactions with Plaintiff, through her NY office, could/would lead to employment litigation in NY and that Plaintiff would not be required to sue each respective Individual Defendant in their respective state(s) of residence. Certainly, Corporate Employer Defendant KPMG, knew that it could not absolve/prevent individual liability against Individual Defendants for their employment decisions, especially in states/cities like NY wherein it is well-known that individuals can be sued for unlawful employment practices, by having Plaintiff's managers and human resources representatives located in other states, while transacting business within NY State remotely. (Exh A. Complaint, ¶¶60-62).

**ARGUMENT(S)**

A. **Motion To Dismiss for Lack of Personal Jurisdiction**:

The personal jurisdiction analysis involves two inquiries: ***first,*** is there jurisdiction under the applicable statute, in this case the CPLR; ***second,*** does the exercise of jurisdiction comport with due process. Grand River Enters. Six Nati ns, Ltd. v. Pwor, 425 F.3d 158, 165 (2d Cir. 2005). In order to defeat a motion to dismiss for lack of personal jurisdiction, "the opposing party need only demonstrate that facts 'may exist' whereby to defeat the motion." Peterson v. Spartan Industries, Inc., 33 N.Y.2d 463,466 (1974); American

BankNotc Corp. v Daniele, 45 A.D.3d 338,340 (1st Dep't 2007). A prima facie showing of jurisdiction "simply is not required." Peterson, 33 N.Y.2d at 467.

**"Even a single, purposeful transaction may suffice to impose jurisdiction if that transaction exhibits a substantial nexus to the cause of action."** Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC, 470 F. Supp. 2d 345, 358 (S.D.N.Y. 2007). "**It is 'clear that the physical presence, in this cellular and digital age, is not necessary' to establish jurisdiction**." Baskett v. Autonomous Research LLP, 2018 WL 4757962, at *11 (S.D.N.Y. 2018). Courts consider "the totality of the circumstances to determine whether activities within the state are sufficient to support personal jurisdiction." Int'l Healthcare Exch., *supra*. At the very least, in the unlikely event there is any doubt as to the jurisdictional basis over the Individual Defendants, Plaintiff is entitled to limited discovery to resolve any factual issues.

## POINT I.
## PLAINTIFF PROPERLY ALLEGED, AND CAN ESTABLISH JURISDICTION OVER INDIVIDUAL DEFENDANTS

As Individual Defendant Movants are domiciled outside NY, to determine personal jurisdiction the Court must "apply the forum state's long-arm statute," which is C.P.L.R. § 302(a), and if the long-arm statute permits personal jurisdiction, the Court will then "analyze whether personal jurisdiction comports with the Due Process Clause of the US Constitution." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163–64 (2d Cir. 2010). Individual Defendants herein are subject to personal jurisdiction under NY's long-arm statute Sections 302(a)(1) and/or (a)(3), and the due process considerations are satisfied.

**1. 302(a)[1]:**

For a plaintiff to establish jurisdiction under Section 302(a)(1), two requirements must be met: **(1)** the defendant or his agent must have transacted business within the state; and **(2)** the claim asserted must arise from that business activity. Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006). CPLR § 302(a)(l) permits a court to exercise personal jurisdiction over a non-domiciliary who, in person or through an agent, transacts any business within the State, provided that the cause of action arises out of the transaction of business. CPLR § 302(a)(l); Lebel v. Tello, 272 A.D.2d 103, 103-04 (1st Dep't 2000). CPLR § 302(a)(l) is a "**single act statute,**" and "**proof of one transaction in NY is sufficient to invoke jurisdiction, even though the defendant never enters New York, as long as the**

**requisite purposeful activities and the connection between the activities and the transaction are shown**." Deutsche Bank Sec., Inc. v. Montana Bel., 21 A.D.3d 90, 93-94 (1st Dep't 2005).

Alternatively, **cumulative minor activities may provide sufficient grounds for "transaction of business" jurisdiction pursuant to** CPLR §302(a)(1 ), so long as the cumulative effect creates a "significant presence" in the state. O'Brien v. Hackensack Univ. Med. Ctr., 305 A.D.2d 199, 200 (1st Dep't 2003). The "test is whether the defendant has engaged in some purposeful activity in NY in connection with the matter in controversy." Otterbourg v. Shreve City Apartments, Ltd. Houston & Rosen, P.C. v Shreve City Apartments. 147 A.D.2d 327,331 (1st Dep't 1989). No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper. Grand River Enterprises Nations, Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005).

In addition, contrary to Defendants arguments, CPLR §302(a)(1) maintains that this Court may exercise personal jurisdiction over any nondomiciliary who transacts any business within the State, either in person or through an agent. **This long-arm statute is applicable to not only corporations but also individuals**. *See* Simonson v. International Bank, 200 N.E.2d 427, 439 (N.Y. 1964). The long-arm statute also applies the broader standard of transacting "any business," rather than the concept of "doing business," which is enough to establish consistent contacts within the state. Muraco v. Ferentino, 247 N.Y.S.2d 598,601 (N.Y. Sup. Ct. 1964) and NY v. Continental Vitamin Corp., 254 F. Supp. 845, 847 (S.D.N.Y. 1966). The transaction of business has been defined in this manner: "In the broadest sense, a piece of business is transacted within this State when an individual or corporation is within or enters this State in person or by agent and, through dealing herein with another, effectuated or attempts to effectuate herein a purpose directly related to his economic affairs, or is a corporation, to its corporate ends." A.Millner Co., Inc. v. Noudar, Lda., 24 A.D.2d 326, 331 (N.Y. App. Div. 1st Dept. 1966).

In the Case at bar, Corporate Defendant KPMG is a foreign corporation, with its principal place of business in NY City. Defendant KPMG derives substantial business, and has a substantial physical presence, in NY State and City. Each individual Defendant, all of whom were managers, officers and directors in KPMG'S TD Office, were conducting business in the State related to Plaintiff's employment, as well as the

employments of other NY based employees in the NY City TD office. Each individual Defendant was responsible for managing Plaintiff and addressing Plaintiff's personnel issues in New York. When Plaintiff complained about discriminatory and retaliatory conduct at KPMG, each Individual Defendant is alleged to have directly played a role in the discriminatory/retaliatory conduct against Plaintiff and/or were involved in the perfunctory investigation of Plaintiff's numerous complaints, which led to her wrongful termination. Individual Defendants are not just employees that had tangential involvement in the causes of action alleged. Instead, they each played direct and active roles in each act about which Plaintiff complains. With respect to the second clause of 302(a)(1), NY courts have "held that a claim 'aris[es] from' a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon." Sole Resort SA. de C.V. v. Allure Resort Mgmt., 450 F.3d 100, 103 (2d Cir. 2006) (holding that the NY long-arm nexus requirement is satisfied unless "the event giving rise to the plaintiff's injury had, at best, a tangential relationship to any contacts the defendant had with New York").

For purposes of CPLR § 302(a)(l) jurisdiction, "[p]urposeful activities are those with which a defendant, through volitional acts, 'avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'." Fischbarg v. Doucet, 9 N.Y.3d 375,380 (2007). CPLR 302(a)(l) "is a 'single act statute' and proof of one transaction in NY is sufficient to invoke jurisdiction, **even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted**." *See* Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 43-44 (N.Y. 1988); S.M.Fabrikant & Sons v. Adrianne Kahn, Inc., 533 N.Y.S.2d 866, 868 (1st Dept. 1988).

The (alleged) fact that Defendants were physically located in other states when they committed their acts upon Plaintiff makes little difference. Also, that Individual Defendants were acting in their capacities of agents for Corporate Defendant KPMG is of no consequence (*infra*). **NY Courts have specifically rejected the Fiduciary Shield Doctrine which provides "that an individual should not be subject to jurisdiction if his dealings in the forum state were solely in a corporate capacity."** Big Apple Pyrotechnics & Multimedia, Inc. v. Sparktacular, Inc., 2007 U.S. Dist. LEXIS 17163 (S.D.N.Y. 2007). In Big Apple, Court of Appeals rejected the "fiduciary shield" doctrine and held that § 302 does not "accord

any special treatment to fiduciaries acting on behalf of a corporation or . . . insulate them from longarm jurisdiction for acts performed in a corporate capacity." (Id.)

Therefore, Individual Defendants are subject to personal jurisdiction since they cannot be shielded when acting on behalf of a defendant corporation in the Forum State. 302(a)(1). Int'l Healthcare Exch., 470 F. Supp. 2d 345 at 359 (S.D.N.Y. 2007); *see also* Baskett v. Autonomous Research LLP, 17-CV-9237 at 11 (VSB)(S.D.N.Y. 2018) (*supervisor's purposeful communications toward NY employee included "emails describing supposedly unnecessary and retaliatory heightened scrutiny and supervision*"). "Courts have repeatedly found that discrimination claims arise from an out-of-state defendant's business in NY when the defendant knowingly '**supervises or communicates with an employee working remotely from New York**,' and the defendant's communications to the employee '**allegedly constitutes acts of discrimination**'." D'Anzieri v. Harrison Glob. LLC, 2022 U.S. Dist. LEXIS 217780 (S.D.N.Y. 2022), (finding jurisdiction sufficient where Plaintiff's claims arose from a communication the out-of-state Defendants made during a remote conference call, which was in furtherance of the corporate principal defendants); (*citing* Kumar v. Opera Sols. LLC., 2021 U.S. Dist. LEXIS 185705, at *8 (S.D.N.Y. 2021) (collecting cases); *see also*, Int'l Healthcare Exch., Inc., *supra*, (finding Section 302(a)(1) satisfied where the plaintiff worked from home in NYC and assignments given to the plaintiff that allegedly gave rise to disparate treatment were communicated by the defendants to the plaintiff via telephone, email, and fax).

This Court in International Healthcare Exchange exercised personal jurisdiction over a defendant based on discriminatory and retaliatory conduct like that at issue here. 470 F. Supp. 2d at 358–60. Like Ms. Roddey in this Case, in International Healthcare Exchange, a plaintiff who worked remotely alleged that work assignments her supervisor communicated to her home in NY "constituted instances of illegal disparate treatment," and that "discussions concerning her complaints about her work assignments took place through the same channels." *Id*. at 358-59. The Court held that the plaintiff's supervisor's conduct was **"sufficient to demonstrate purposeful transaction of business that has a substantial nexus to [p]laintiff's employment discrimination cause of action, within the meaning of section 302(a)(1) of New York's C.P.L.R**." *Id*. *See also*, Baskett, *supra, at* *11 (allegations that individual defendant **"delegated day-to-day responsibilities to plaintiff and that plaintiff communicated with [individual**

**defendant] by telephone and email . . . support an inference that [defendant] transacts sufficient business in NY and that his contacts with NY are related to plaintiff's claims against defendants**"); Thorsen v. Sons of Norway, 996 F. Supp. 2d 143, 157 (E.D.N.Y. 2014) (sufficient contacts where defendants "interviewed via telephone and other electronic means people in New York, communicated via email and letter with people in New York, and **delivered the conclusions of the allegedly faulty investigation in person in New York**"); Steuben Foods, Inc. v. Morris, 2002 WL 1628061, at *3 (W.D.N.Y. 2002) (defendant transacted business within the meaning of Section 302(a)(1) where it projected itself into NY to recruit employees because such recruitment was "purposeful" and related to plaintiff's claims). In Ms. Roddey's case, Ms. Roddey lived in Georgia but conducted all of her work remotely in New York. Individual Defendants were compelled to insert themselves into NY to supervise Ms. Roddey and address her (multiple) discrimination complaints. But for KPMG's NY office, Ms. Roddey would not have been able to work at KPMG (*see*, Exh A. Complaint ¶¶19-21).

With respect to CPLR § 302(a)(l ), Defendants merely make the conclusory and disingenuous argument that the Plaintiff does not allege that Defendants transacted any business in in NY and does not allege that any claim arose out of any transaction in New York. However, based upon the record thus far, all individual Defendants were actively and consistently conducting business in NY when they each engaged with Plaintiff (in their supervisory capacities) to further discrimination against Plaintiff, or to further the retaliatory hostile work environment against Plaintiff. Even if Individual Defendants never stepped foot in New York, that would not be dispositive, as the law is clear that **physical presence is not required**. Deutsche Bank, Inc. v. Montana Bd., 7 N.Y.3d 65, 71, (2006) (noting that growth of national markets and technological advances "***enable a party to transact enormous volumes of business within a state without physically entering it***").

The totality of Individuals Defendants' actions and contacts with New York, as set forth above, demonstrate that they should each be subject to the jurisdiction of New York. By **[1]** working for a New York-based company that extensively serves the NY market; **[2]** frequently communicating with coworkers, subordinates, and other employees in the NY office; **[3]** utilizing KPMG'S communications systems to

supervise and make business decisions in the NY market; and **[4]** (*potentially* [1]) travelling to the NY TD office for business when required or requested, it is clear that (or at least an issue of fact whether) Individual Manager Defendants had a significant presence in NY and availed themselves of the privileges and benefits of NY. The relevant authorities dictate that Defendants are subject to long arm jurisdiction. *"Where out-of-state managers and supervisors 'knew' their employee plaintiff 'worked from NY, permitted her to do so, regularly communicated with her via email, phone, and virtual meeting for a sustained period of time and facilitated her remote work by sending her a company laptop and . . . issuing her a cell phone with a NY number, those managers and supervisors purposefully availed themselves of the privilege of conducting business in NY."* Doe v. McAdam Fin. Grp. LLC, 2022 U.S. Dist. LEXIS 150555 (S.D.N.Y. 2022); and Williams v. Preeminent Protective Servs., Inc., 81 F. Supp. 3d 265, 271-72 (E.D.N.Y. 2015).

Individual Defendants' conduct(s) also satisfy § 302(a)(1)'s requirement that the plaintiff's claims arise from the defendants' transactions with NY. The Complaint plausibly alleges that Individual Defendants **personally** participated in the unlawful conduct against Plaintiff during her NY-based remote employment based (in part) on her communications with Defendants during the relevant period (*see,* Compl. ¶¶19-62). Plaintiff provided several examples where Defendants communicated with Plaintiff through her remote connections in the NY office. Indeed, Plaintiff's Complaint is replete with allegations of discriminatory and retaliatory conduct taking place against her via her remote connections (phone calls, emails, and virtual meetings) as a NY based employee. Those communications are directly connected to Plaintiff's discrimination and retaliation claims, including those specifically against each Individual Defendant. Such unlawful treatment included: [1] imposing obligations on Plaintiff that were not required of other employees; [2] giving Plaintiff discriminatory work assignments; [3] undermining Plaintiff's ability to secure assignments; [4] refusing to provide Plaintiff information to do her job; [5] forcing Plaintiff to sit idle, while her counterparts were being actively placed in roles; [6] terminating Plaintiff for not having assignments and (outrageously) claiming that Plaintiff rejected assignments while Plaintiff fought painstakingly to be assigned to work; [7] terminating Plaintiff within a day of a complaint and within a day

---

[1] *See* Point IV below. Plaintiff seeks, and is entitled to, discovery on this issue – as a matter of law.

of the end of Defendants' alleged investigation into Plaintiff's complaints. (*see,* Amended Compl.).

**2. 302(a)[3]:**

Alternatively, jurisdiction is also proper over Individual Defendants pursuant to CPLR § 302(a)(3). Section 302(a)(3) requires a *prima facie* showing that: **(1)** defendant committed a tortious act outside New York; **(2)** the cause of action arose from that act; and **(3)** the tortious act caused an injury to a person or property in New York. Penguin Grp. (USA) Inc. v. Am. Buddha, 16 N.Y.3d 295, 302 (2011). Also, a plaintiff must plausibly allege either that **(i)** defendant "regularly does or solicits business, or engages in other persistent course of conduct" in New York; or **(ii)** that defendant "expected or should reasonably have expected [his actions] to have consequences in NY and defendant derived substantial revenue from interstate or international commerce." CPLR § 302(a)(3)(i)-(ii).

First, it is undisputed that "discriminatory acts constitute torts within the meaning of section 302(a)," Hollins v. U.S. Tennis Ass'n, 469 F. Supp. 2d 67, 77 (E.D.N.Y. 2006). Second, to determine whether an injury occurred in NY for the purposes of CPLR § 302(a)(3), courts apply a "situs of injury" test, "which asks them to locate the original event which caused the injury." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001). The Second Circuit has held that, "**when a person is employed in NY (or performs a substantial part of the duties of his or her employment in NY) . . . her removal from that employment (or from those duties) is a NY event that constitutes 'the first effect of the tort' of discharging the employee**.'" *Id*. at 85., *see also* Litton v. Avomex, Inc, at *6 (N.D.N.Y. 2010) ("When a person is employed in NY, or performs a substantial part of the duties of his employment in NY, his experience of being [discriminated against] is a NY event that constitutes the first effect of the tort.").

As set forth above, Plaintiff Roddey's claims are based on discriminatory and retaliatory actions Individual Defendants took against her as a NY employee. Accordingly, Plaintiff Roddey makes a sufficient showing that the first effect of Individual Defendants' "discriminatory behavior was experienced by plaintiff" in New York. Hollins, 469 F. Supp. 2d at 77 (plaintiffs are entitled to jurisdictional discovery where "[m]any of the instances of discriminatory conduct alleged by plaintiffs concern plaintiffs' alleged exclusion from" work assignments); *see also,* Launer v. Buena Vista Winery, Inc., 916 F. Supp. 204, 211–12 (E.D.N.Y. 1996) (under § 302(a)(3), court held that "the injury occurring in this instance was received

in NY where plaintiff had been working for defendants and had been negotiating for his job").

The Second Circuit gave the clearest analysis of this issue in the Matter of DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 85 (2d Cir. 2001). In that case, the plaintiff worked out of his own office in New York, and the defendant was a Delaware corporation that had its principal place of business in Rhode Island. The DiStefano plaintiff was fired while at a meeting in New Jersey and alleged that said termination was discriminatory. The Second Circuit determined that Plaintiff could maintain his action against the Defendants in NY under CPLR § 302(a)[3], stating: "when a person is employed in NY (or performs a substantial part of the duties of his or her employment in New York), his or her removal from that employment (or from those duties) is a NY event that constitutes "the first effect of the tort" of discharging the employee." (*Id*. at 85). The Second Circuit then determined that "such a removal constitutes an '*original event*' occurring in NY which . . . satisfies the requirements of § 302(a)(3)." (*Id*.) Likewise, Plaintiff Roddey was employed in Defendants' NY office. Unlike the Defendants in DeStefano, who had no office in NY, KPMG has its principal place of business in NY wherefrom Ms. Roddey worked remotely. The decision to terminate Ms. Roddey's employment came from her NY office. The underlying discriminatory conduct against Ms. Roddey took place through KMPG's NY office. As such, Ms. Roddey's termination and the discriminatory conduct that preceded said termination were "*NY events*," that confer jurisdiction in New York, as per the Second Circuit. (*Id*.)

**a. Individual Defendants Regularly Do Business in New York:**

Plaintiff also makes a sufficient showing to satisfy section 302(a)(3)(i) 's requirement that Scott "regularly does . . . business or engages in another persistent course of conduct" in New York. Hollins, 469 F. Supp. 2d at 76. "**The amount of business that must be conducted to satisfy this standard is less than that which is required to satisfy the conventional doing business standard**." *Id*. at 77. In this case, Defendant KPMG's main office, including the main TD office, is in NY City. Plaintiff was based in NY City and each Defendant interacted with Plaintiff multiple times through her NY base. Plaintiff's communications with Defendants through her employment in NY were extensive, occurred over many months, and go to the heart of her discrimination and retaliation claims against Defendants. Plaintiff's

termination also occurred from her NY office in New York. Thus, there is a sufficient basis to find personal jurisdiction in NY under C.P.L.R. § 302(a)(3)(i).

Under the first prong of that section, Plaintiff alleges that Individual Defendants knew that the effects of any business-related conduct, including the allegedly discriminatory and retaliatory conduct against Plaintiff, would be felt by Plaintiff in New York, where she was based. (Complaint, ¶¶ 44-62). Regarding the second prong, Plaintiff has alleged that Individual Defendants conducted substantial business in New York, is headquartered in New York, and has its main office of operations in New York. (See Am. Compl. ¶¶ 14, 19, 24-25, 54-61). The Complaint specifically alleges that Defendants should have expected that its discriminatory and retaliatory conduct would have consequences in NY (*Id*. ¶¶60-62). (*See* Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc., 156 F. Supp. 3d 348, 357 (E.D.N.Y. 2016) ("[T]he situs of the injury inflicted upon [defendant] was in NY because [the defendant's] financial loss occurred there."; Thorsen v. Sons of Norway, 996 F. Supp. 2d 143, 155 (E.D.N.Y. 2014) (defendant's telephone calls and emails demonstrated that he "projected himself into NY in such a manner that he purposefully availed himself of the privilege of conducting activities in NY and thereby invoked the benefits and protections of its laws"; Stamper v. Tech, Inc. v. 3DCD, LLC, 2012 WL 12875287, at *4 (W.D.N.Y. 2012) (concluding that an out-of-state defendant was subject to jurisdiction in NY because the "Defendant made telephone calls and sent emails to [p]laintiff in NY while negotiating [a] contract").

**3. Subjecting Individual Defendants To Jurisdiction Is Consistent With Due Process:**

Subjecting Individual Defendants to jurisdiction in NY also complies with Constitutional notions of due process. Under the Due Process Clause, a nonresident generally must have "certain minimum contacts such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." International Shoe Co. v. Washington, 326 U.S. 310,316, (1945). The Due Process Clause analysis has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. Chloe v. Queen Bee of Beverly Hills, LLC , 616 F.3d 158, 164 (2d Cir. 2010). With respect to minimum contacts, the Court must determine whether the individual defendants have sufficient contacts with the forum state to justify the exercise of personal jurisdiction. A nonresident defendant has minimum contacts with the forum state if he or she commits "some act by which the defendant purposefully avails itself of the privilege

of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Bochner v. Heise, 410 F. Supp. 2d 228,238 (S.D.N.Y. 2006). As described above in detail, all Individual Defendants engaged in regular, systematic, and continuous contact in NY with Plaintiff as well as the NY TD office, thereby giving rise to NY jurisdiction, and clearly satisfying the Due Process standard. Individual Defendants have significant TD business activities aimed at NY and have benefitted from the privilege of conducting such activities, and thus should reasonably expect their employment actions against a NY based employee would subject them to suit in New York.

With respect to the Court's analysis of reasonableness, the Supreme Court has held that courts must evaluate the following factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. Asahi Metal lndus. Co. v. Superior, 480 U.S. 102, 113-14, 107 S.Ct. 1026 (1987).

***First,*** as for "burden on the Defendant," Defendants would not be burdened litigating in NY as they are all employed with a large international company, with its headquarters in NY City. As KPMG'S TD office is in NYC, relevant witnesses and evidence would be located in NYC as well. ***Second***, as for "interest of the forum state," NY State and City, both with separate and distinct Human Rights Laws, have "manifest interest in providing effective means of individuals working in NY" and preventing discrimination inside it borders. (*See,* Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 169 [2d Cir. 2015].) ***Third and fourth***, as for "convenient relief for the Plaintiff," and "efficiency for the Courts" if the Court were to accept Defendants' arguments, Plaintiff would be compelled to have to sue each individual Defendant in their own state of residence, while continuing this action against the employer, KPMG, in NY. This would lead to several lawsuits all occurring at the same time, in several different states, which may each have contradictory outcomes, though based on the same facts. As such, judicial efficiency is preserved for Plaintiff and the Courts by continuing this matter in NY. (*See* Chloe, supra, 616 F.3d at 171 (holding that the "assertion of personal jurisdiction over [the defendant] comports with due process for the same reasons that it satisfies NY's long-arm statute"); & Baskett, 2018 WL 4757962, at *12 [same].)

**POINT II.**
**PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS ARE PROPER AS THE ALLEGED DISCRIMINATORY AND RETALIATORY CONDUCT OCCURRED IN NY & *THE IMPACT* THEREOF WAS FELT BY PLAINTIFF IN NY**

In Point II of their memorandum, Defendants attempt to have this Court adopt a new (unsupported) legal standard that the Parties "residence" and "domicile" determines whether Plaintiff can assert claims under the NY State and City Human Rights Laws. (*See* Def's Memo pp. 20 – 24). This is incorrect.

Under the NYS and NYC Human Rights laws, "an individual may be liable under § 296(6) for directly participating in the unlawful conduct, regardless of his status in the corporation." Bass v. World Wrestling Fed'n Entm't, 129 F. Supp. 2d 491(EDNY 2001). "The NYCHRL and NYSHRL apply only to plaintiffs who **"either work in *or*** reside in the State or City." D'Anzieri v. Harrison Glob. LLC, 2022 U.S. Dist. LEXIS 217780 (S.D.N.Y. 2022), *citing*, Ware v. L-3 Vertex Aerospace, LLC, 833 F. App'x 357, 359 (2d Cir. 2020). **When a Human rights law claim is brought "against a nonresident defendant, the discriminatory and retaliatory conduct must have had an "impact" within the city to be covered.** *Id*., *citing,* Rinaldi v. NICE, Ltd., 2021 U.S. Dist. LEXIS 40822 at *8 (S.D.N.Y. 2021). "**[I]t is the site of impact, not the place of origination,** that determines where discriminatory acts occur." *Id*., *citing,* Int'l Healthcare Exch., *supra* at 362. "To be actionable under the NYSHRL, a defendant must have "committed discriminatory acts against the plaintiff in New York." Sorrentino v. Citicorp, 302 A.D.2d 240, 240, 755 N.Y.S.2d 78 (1st Dep't 2003), *see also*, Taperell, 2019 U.S. Dist. LEXIS 38608, 2019 WL 1118053, at *4 (concluding that the nonresident defendant's termination of the plaintiff affected the terms and conditions of the plaintiff's employment under the NYSHRL because she worked in New York). Accordingly, under the State and City Human Rights Laws, if Defendants' conduct impacted Plaintiff in New York, Plaintiff can maintain her claims against Individual Defendants under long arm jurisdiction.

In the above regard, Defendants ignore and refuse to address the uncontested and most significant fact, and allegations in Plaintiff's complaint, that Plaintiff received unemployment benefits in/from the State of NY as a result of her wrongful termination from KPMG. (*See,* Complaint ¶43) Further, Defendants fail/refuse to address the uncontroverted facts that **it was Defendant KPMG that determined that Plaintiff would be paid under NY law and her employment taxes when she was employed would be paid to the State of New York, not Georgia**. (Complaint ¶¶39-43). When Plaintiff was terminated, she

was compelled to return all her equipment to KMPG's NYC office, where Plaintiff worked. For all intent(s) and purposes, Defendant KPMG was well aware that Plaintiff has always been considered a NY KMPG employee and **Plaintiff was treated by KPMG as if she was a NY State employee and resident**. (*Id.*) Individual Defendants also subjected Plaintiff to ongoing and continuous discriminatory and retaliatory practices while she was a NY employee, assigned to work from Defendants' NY headquarters. The "impact" of Individual Defendants' conduct against Plaintiff before she was terminated occurred in New York. Only now, in this litigation, do Defendants make the convenient argument that Plaintiff was not a NY employee.

As Plaintiff paid NY State taxes during her tenure at KMPG, she was a NY employee, and the "situs" of the injury took place in NY. Further, Plaintiff being paid NY State unemployment benefits supports that the "impact" of Plaintiff's wrongful termination was felt in NY (Compl. ¶¶39-43). All of the discriminatory and retaliatory actions that occurred to Plaintiff occurred through her base office in NY. Plaintiff was (wrongfully) fired from her office in NY City. Defendants could not have taken any employment actions against Plaintiff absent her NY based office. (*Id.* ¶¶45-48, 51-60).

"A number of federal district court cases do suggest that the fact that a termination actually occurs in NY City may be sufficient to apply the City and State human rights laws." Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societa Per Azioni, 549 F. Supp. 2d 549 (S.D.N.Y. 2008), *citing*, Tebbenhoff v. Elec. Data Sys. Corp., 2005 U.S. Dist. LEXIS 29874, at *15 (S.D.N.Y. 2005) (finding that the NYSHRL's and NYCHRL's jurisdictional requirements were met because, among other reasons, "a discriminatory act was committed within NY City when [a defendant] called and terminated plaintiff from defendants' NY City offices"). As per this District Court in Rylott-Rooney, *supra,* "the Second Circuit has concluded that the execution of a decision to terminate an employee - felt at the place where that decision is communicated - is the 'initial tort,' while the experience of being removed from a job - felt at the employee's workplace - is the "original event" Rooney, *supra.* As per this District Court in Rooney, "when an employee is terminated in a location other than [her] workplace, the act of termination is the original tortious act (such that, if it occurs in New York, section 302(a)(2) confers jurisdiction) and the experience of being removed from employment is the original event causing the injury (such that, if the workplace is in New York, section 302(a)(3) confers jurisdiction)." (*Id.*) "**So long as one or the other of those two events occurs in New**

**York, NY courts can exercise long-arm jurisdiction over the defendant" under both the NY State and City Human Rights Laws** (Id. at 85) The Rooney court continued:

> The Court sees no reason why a similar analytic framework should not govern anti-discrimination protection under the NYCHRL and NYSHRL, such that those laws apply either when the initial discriminatory act (for example, a termination) occurs in NY or when the original experience of injury, which occurs at the employee's workplace, is in New York. Indeed, the plain language of the City and State human rights laws supports this reading. . .**Here, it is undisputed that the act of termination occurred in New York. That alone is sufficient to establish discrimination 'within' New York, even if, as Alitalia argues, Rylott-Rooney felt the effects of this termination at her workplace in Minnesota.** *[emphasis added]*

Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societa Per Azioni, *Supra.*

**POINT III.**
**SUMMARY JUDGMENT IS INNAPPROPRIATE AS DEFENDANTS' DECLARATIONS DO NOT ELIMINATE RELEVANT ISSUES OF FACT.**

In Point III of their memorandum, Defendants provide a very limited and short-sighted argument that summary judgment is proper because Plaintiff "failed to adequately allege that the conduct which gave rise to her NYSHRL and NYCHRL claims occurred in New York." (Def's memo p. 24). Further, in their Declarations, Individual Defendants appear to think that just because they did not have their own offices in NY City, that alone is sufficient to grant summary judgment. This is inaccurate.

Just looking at Defendants' argument section in support of summary judgment demonstrates that Defendants are confused about the law. Specifically, though Defendants agree that the place of **"impact"** is the relevant inquiry for jurisdiction under the NYS and NYC Human Rights Laws, Defendants, nevertheless, incorrectly argue in support of summary judgment that "Summary Judgment is appropriate . . . **because the alleged conduct indisputably occurred outside of New York**." (Def's memo., Point II (B), p.24). Third, as per Point II above, the "impact" of Plaintiff's termination occurred in New York. Plaintiff incorporates the arguments set forth in Point II above in this regard.

Contrary to Defendants' claims, Plaintiff did physically visit the NY Office as a member of the NY office on at least two occasions. **(Exh. Roddey Decl. ¶¶15-21).** On other occasions when Plaintiff tried to report to the NY office, Plaintiff was told to not report to the office due to COVID-19 protocols. (Id.)

Plaintiff confirms that Defendants had to connect with her through the NY Office, as a NY Employee. (*Id.* ¶10-12, 26-27). **Finally**, that Defendants may not have had physical offices in NY is not dispositive since Plaintiff is asserting specific, long-arm jurisdiction, due to their discriminatory conduct

outside of the State that "impacted" Plaintiff within the State of New York. Notice, Defendants *do not* state in their Declarations that they *"never transacted business"* (for KPMG) within NY State. (S*ee* Def's Decls, *see also,* **Exh B. Roddey Decl ¶¶26-29**). Defendants *do not* claim that they've never visited NY State, or KPMG'S central office, for business purposes. (*Id*.) Defendants *do not* address whether they have (or had) further connections to KPMG or its NY employees in KPMG'S TD office in NY State. (*Id*.) Despite their claims that they do not have office or residences in NY State, individual Defendants could have still routinely inserted themselves into the State, with regard to their employments with KPMG, enough that jurisdiction is appropriate. (*Id*.) **Thus, Defendants have not begun to eliminate issues of fact relevant to this issue.** Simply stating that they "have no offices" in NY does not obviate whether they are subject to longarm jurisdiction in this State and warrants further discovery on the issue.

Defendants' arguments and Declarations in support of summary judgment do not obviate the fact that Plaintiff asserts that she held employment within NY and that the effects or "impact" of Defendants discriminatory/retaliatory conduct occurred in New York. Wilcox v. PRC of N.Y. L.P., 1997 U.S. Dist. LEXIS 3854 at * 5 (N.D.N.Y. 1997) ("a plaintiff need not allege that the discrimination originated in NY if she alleges that the discriminatory practice affected the conditions of her employment in NY."). Plaintiff Roddey "asserts sufficient factual allegations from which it may reasonably be inferred that plaintiff was employed in NY and that the terms, conditions and privileges of her employment in NY were affected, indeed entirely lost, by defendants' allegedly discriminatory conduct in terminating her employment" for discriminatory reasons. Taperell, *Supra.* Under the NYC and NYS Human Rights Law(s), "a plaintiff need not allege that the discrimination originated in New York if she alleges . . . that the discriminatory practice affected the conditions of her employment in New York[,]" and the "nonresident plaintiff must demonstrate that the alleged discriminatory conduct had an 'impact' within the city" Curto v. Med. World Communs., Inc., 388 F. Supp. 2d 101, 107 (E.D.N.Y. 2005); Hoffman v. Parade Publ'ns, 15 N.Y.3d 285, 290 (2010). Here, Plaintiff sufficiently alleges that the impact of Individual Defendants' discriminatory activity impacted the terms and conditions of Plaintiff's employment in NY.

## POINT IV.
## DISMISSAL OF PLAINTIFF'S CLAIMS AGAISNT INDIVIDUAL DEFENDANTS IS PREMATURE WITHOUT FURTHER DISCOVERY

Should this Court have any doubt as to the sufficiency of the jurisdiction against the Defendants, the Plaintiff is entitled to limited jurisdictional discovery. The law is clear that it is within a District Court's discretion to determine whether a plaintiff is entitled to conduct jurisdictional discovery and to "devis[e] the procedures [to] ferret out the facts pertinent to jurisdiction." Kiobel v. Royal Dutch Petroleum Co., 2009 WL 3817590, at *4 (S.D.N.Y. 2009), *citing* Daventree Ltd. v. Republic of Azerbaijan, 349 F.Supp.2d 736, 761 (S.D.N.Y. 2004). Where a plaintiff has set forth sufficient facts raise an issue as to jurisdiction against a defendant, a Court should allow discovery on the question of Defendants' contacts with the forum state. *See* Gundlach v. IBM Corp., 2012 WL 1520919, at *11 (S.D.N.Y. 2012). To be permitted such discovery, plaintiff need not have made a *prima facie* showing, but at the very least must have made a sufficient start and shown its position to be non-frivolous. BHP Trading (UK) Ltd. v. DeSea 1991 WL 198747, at *5 (S.D.N.Y. 1990). Furthermore, limited discovery is appropriate where the relevant information regarding Individual Defendants' contacts with KPMG's NY office is within the defendants' knowledge or possession. *See* Uebler v. Boss Media, AB, 363 F. Supp. 2d 499, 506 (E.D.N.Y. 2005) (discovery allowed where the facts necessary to establish personal jurisdiction lie within [Defendant's] exclusive knowledge").

**POINT V.**
**SHOULD THE COURT REQUIRE FURTHER ALLEGATIONS RELATED TO JURISDICTION, THE COURT SHOULD ALLOW FURTHER AMENDMENT OF THE AMENDED COMPLAINT**

Plaintiff believes the Amended Complaint sufficiently alleges facts that jurisdiction is proper. Plaintiff does not think that further amendment is necessary and did not provide a proposed second amended complaint to consider because Plaintiff believes her current complaint is adequate. Should the Court not agree, Plaintiff respectfully seeks leave to further amend the Amended Complaint to cure any deficiencies.

Under FRCP Rule 15(a), leave to amend "shall be freely given when justice so requires." Twisted Records v. Rauhofer, 2005 WL 517328 (S.D.N.Y. 2005), *citing*, FRCP Rule 15(a). "A motion to amend should be denied, however, "if there is an 'apparent or declared reason such as . . . repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party, [or] futility of amendment." (*Id*.) Here, there has been no repeated failure to cure deficiencies in the Amended Complaint, nor can there be prejudice to Defendants in allowing a second amendment. Finally, given the facts argued above, this is not a case wherein an amendment would be futile.

**CONCLUSION**

For the reasons stated above, the Court should deny Defendants' motion in its entirety.

Dated: New York, New York
January 31, 2023

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

By: ____________________________
Gregory Calliste, Jr.
Alexandria Jean Pierre
*Attorneys for Plaintiff Coretta Roddey*
gcalliste@tpglaws.com
ajean-pierre@tpglaws.com