UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
CORETTA RODDEY,                              :
                                             :
                         Plaintiff,          :
                                             :           22-CV-7405 (VSB)
         - against -                         :
                                             :           **OPINION & ORDER**
                                             :
KPMG L.L.P., *et al.*,                       :
                                             :
                         Defendants.         :
                                             :
------------------------------------------------------------X

Appearances:

Laura Elizabeth Bellini
Gregory Calliste, Jr.
Phillips and Associates
New York, NY *and* Middletown, NJ
*Counsel for Plaintiff*

Justine Leigh Abrams
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Morristown, NJ
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Coretta Roddey ("Plaintiff" or "Roddey") filed this lawsuit against Defendants Sabrina Donnelly, Jonathan Edgerton, Julie Molitor, Jonathan Wyatt, Yvonne Garcia, Timothy Phelps, and Allison Sumrow (collectively, "Individual Defendants"), and KPMG L.L.P. ("KPMG" or together with Individual Defendants, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. 1981 ("Section 1981"); the New York State Human Rights Law ("NYSHRL" or "State HRL"), N.Y. Exec. L. § 290, *et seq.*; and the New York City Human Rights Law ("NYCHRL" or "City

HRL"), N.Y.C. Admin. Code § 8-107, *et seq*.  Before me is Defendants' motion to dismiss Plaintiff's amended complaint against the Individual Defendants for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Defendants also move to dismiss the NYCHRL and NYSHRL claims for failure to state a claim under Rule 12(b)(6), or in the alternative for summary judgment on the state law claims.  Because Plaintiff fails to establish personal jurisdiction, Defendants' motion to dismiss the Individual Defendants is GRANTED.  Because I find KPMG's actions have sufficient impact in New York to state a claim under the State and City Human Rights Laws, Defendants' motion to dismiss the NYCHRL and NYSHRL claims—or in the alternative for partial summary judgment—is DENIED.

## I.  Factual Background[1]

On September 16, 2021, Plaintiff, who is an African American woman, was hired by KPMG as a Manager of Transformational Delivery and Consulting.  (Doc. 27 ("Am. Compl.") ¶ 74.)  Plaintiff's role was based out of KPMG's New York office.  (*Id.* ¶ 23.)  Plaintiff's offer letter stated that "by March 27, 2022, [Roddey] must relocate [her] residence to the New York City area and be able to work full time in the New York City area."  (*Id.* ¶ 29.)  Plaintiff lived in Georgia at the time she was hired but was planning to relocate to New York.  (Doc. 51 ("Pl. 56.1") ¶¶ 1–2.)  Plaintiff's role, amongst other things, included supporting business development activities, delivering advisory methodologies, developing relationships with client executives, and leading the KPMG team in delivery of services and client support.  (Am. Compl. ¶ 79.)

Plaintiff began working for KPMG on September 27, 2021.  (*Id.* ¶ 77.)  Plaintiff worked remotely from Georgia due to KPMG's Covid-19 remote work policy, which did not permit

---

[1] Unless otherwise noted, the following relevant facts are taken from Plaintiff's Amended Complaint, (Doc. 27 ("Am. Compl.")), which I assume to be true for purposes of the motion to dismiss for failure to state a claim, *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My references to these facts should not be construed as a finding as to their veracity, and I make no such findings.

employees to work in-office at that time. (*Id.* ¶¶ 30, 36; *see also* Doc. 44 ("Tran Decl.") ¶ 5.) Plaintiff was given a New York telephone number for work calls and her email signature had the address of KPMG's New York office. (Am. Compl. ¶¶ 37–38.) Plaintiff's paychecks deducted New York state taxes. (*Id.* ¶ 41.)

On October 7, 2021, Plaintiff met with her supervisor, Sabrina Donnelly, who informed her that she was being proposed for a project based out of St. Louis, Missouri. (*Id.* ¶ 81.) Plaintiff informed Donnelly that she had safety concerns about the assignment due to the unrest in the area following the death of George Floyd and the subsequent deployment of the National Guard. (*Id.* ¶¶ 83–84.) Plaintiff also reached out to various other supervisors to communicate her concerns. (*Id.* ¶¶ 88, 94.) Nonetheless, an email was sent introducing Plaintiff to the St. Louis team. (*Id.* ¶ 91.) Around this time, Donnelly assured Plaintiff that her name was being proposed to manage KPMG's Goldman Sachs and American Express accounts. (*Id.* ¶ 95.) Plaintiff then learned that her name was not put forward to manage the Goldman Sachs and American Express accounts. (*Id.* ¶¶ 96, 98.)

Plaintiff began to feel concerned about lack of opportunity and transparency from her supervisors. She sent out various introductory emails to KPMG executives, introducing herself as a new hire and requesting opportunities to engage with business development initiatives. (*Id.* ¶ 102–05.) Plaintiff did not receive any responses. (*Id.* ¶ 107.) Plaintiff observed that similarly situated managers, none of whom were African American, were receiving opportunities and support. (*Id.* ¶ 118.)

Around mid-October, Plaintiff met with Allison Sumrow, a Financial Services Resource Manager, and told her that "she was the only African American female" manager in financial services based in New York, and she wanted to be "treated fairly [and given] the same

3

opportunities given to other managers." (*Id.* ¶¶ 126–28.) Sumrow told Plaintiff that her name was being submitted for available opportunities. (*Id.* ¶ 132.) On October 14, 2021, Plaintiff met with a Human Resources partner and expressed concerns about the lack of transparency and opportunity she was experiencing. (*Id.* ¶¶ 134–35.)

On October 22, 2021, Plaintiff was informed that she would be given a role with the Goldman Sachs Carbon Project ("Carbon Project"), although she did not receive the onboarding paperwork. (*Id.* ¶¶ 140–41.) On November 5, 2021, Jonathan Edgerton, a Principal of Operations and Compliance Risk, indicated he was involved with the onboarding process and asked when Plaintiff would be in New York. (*Id.* ¶¶ 66, 142.) Plaintiff confirmed that she would be in New York and ready to join the Carbon Project team. (*Id.* ¶ 143.) In mid-November, Plaintiff was informed that she had not been selected for the Carbon Project position. (*Id.* ¶ 148.)

"Plaintiff became concerned that [] KPMG simply did not want to put an African American face on it's (then) available projects" to her detriment. (*Id.* ¶ 158.) Plaintiff raised her concerns on a call with the Head of Diversity for KPMG on November 14, 2021. (*Id.* ¶ 159.) Plaintiff's concerns were communicated to the Ethics & Compliance Department, to whom Plaintiff provided evidence of her claims. (*Id.* ¶¶ 164–66.) On November 18, 2021, Plaintiff was informed that her "concerns and emails were being referred to the Ethics & Compliance department and that an investigation was (allegedly) being opened." (*Id.* ¶ 173.) On January 27, 2022, Plaintiff reached out to raise another concern about "being excluded from the on-site annual advisory training, in retaliation, although she signed up in October 2021." (*Id.* ¶¶ 186–88.) That same day, Plaintiff was informed that KPMG could not substantiate her allegations. (*Id.* ¶ 193.)

4

On January 28, 2022, Plaintiff met with a human resources representative and Development of Professional Practice partner Timothy Phelps, who informed her that her employment was being terminated for rejecting projects.  (*Id.* ¶¶ 70, 195, 199.)  At the time Plaintiff's employment was terminated, she was still living in Georgia, although she had reported to the New York office twice throughout her employment.  (Pl. 56.1 ¶¶ 1–2.)  Plaintiff subsequently received unemployment benefits from the New York State Department of Labor.  (Am. Compl. ¶ 43.)

On March 11, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶ 15.)  On June 3, 2022, the EEOC issued a Notice of Right to Sue.  (*Id.*)

## II.    Procedural History

Plaintiff filed this lawsuit on August 30, 2022.  (Doc. 1.)  On November 22, 2021, Defendants moved to dismiss the complaint.  (Doc. 9.)  Plaintiff then amended her complaint on December 7, 2022.  (Am. Compl.)  On December 8, 2022, I denied Defendants' original motion to dismiss as moot.  (Doc. 29.)

Defendants moved to dismiss the Amended Complaint, or in the alternative, for partial summary judgment, on December 20, 2022.  (Doc. 34.)  Plaintiff filed her opposition brief on January 31, 2023.  (Doc. 50.)  Defendants filed their reply brief on February 14, 2023.  (Doc. 53.)

### III. Legal Standard

#### A. *12(b)(2)*

"On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)). At this preliminary stage, a plaintiff only needs to make a "prima facie showing" of jurisdiction, which "may be established solely by allegations." *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18-CV-11386, 2023 WL 4159358, at *4 (S.D.N.Y. June 2, 2023) (citing *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013)). In deciding such a motion, a court can look beyond the pleadings at affidavits and other supporting materials. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). The allegations in the complaint "must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid*, 702 F.3d at 727 (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)). Moreover, "all pleadings and affidavits are to be construed in the light most favorable to the plaintiff," *Dorchester*, 722 F.3d at 84 (internal quotation marks omitted), and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party," *Seetransport*, 989 F.2d at 580 (internal quotation marks omitted). A court, however, "will not draw argumentative inferences in the plaintiff's favor; nor must [a court] accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted).

**B.  *12(b)(6)***

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*  A complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (citation omitted).

IV.  **Discussion**

A.  *Personal Jurisdiction*

Defendants move to dismiss all claims against the Individual Defendants for lack of personal jurisdiction.  In determining whether personal jurisdiction exists, courts "engage in a two-part analysis, first determining whether there is a statutory basis for exercising personal jurisdiction, and second deciding whether the exercise of jurisdiction comports with due process." *BWP*, 69 F. Supp. 3d at 349 (internal quotation marks omitted).  The statutory portion of the analysis "is determined by the law of the state in which the district court sits." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102–03 (2d Cir. 2006) (citing, *inter alia*, Fed. R. Civ. P. 4(k)(1)(A)).  Plaintiff does not contest that I lack general jurisdiction over the Individual Defendants, none of whom are domiciled in New York.  Instead, Plaintiff argues that there is specific jurisdiction over each Individual Defendant pursuant to New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1) and § 302(a)(3).

1.  **C.P.L.R. § 302(a)(1)**

Pursuant to section 302(a)(1), a court in New York may exercise personal jurisdiction over a non-domiciliary if (1) the defendant "transacted business within the state; and (2) the claim asserted [arose] from that business activity." *Sole Resort*, 450 F.3d at 103 (citing *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)).  "With respect to the first part of the test for jurisdiction under section 302(a)(1), New York courts define 'transact[ing] business' as purposeful activity—'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (first quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967), then quoting *Hanson v.*

8

*Denckla*, 357 U.S. 235, 253 (1958)); *see also id.* at 247 (noting that this standard has been adopted from Supreme Court precedent analyzing the constitutional boundaries of personal jurisdiction). "Not all purposeful activity, however, constitutes a 'transaction of business' within the meaning of Section 302(a)(1)." *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007). "Rather, contacts with New York have been found to sustain personal jurisdiction only where a 'defendant's direct and personal involvement on his own initiative projected himself' into New York to engage in a 'sustained and substantial transaction of business.'" *Aquiline Cap. Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (quoting *Parke–Bernet Galleries v. Franklyn*, 256 N.E.2d 506, 508 (N.Y. 1970)) (alterations adopted).

None of the Individual Defendants lived, worked, or owned property in New York, nor were any of the Individual Defendants based out of KPMG's New York office at any point during Plaintiff's tenure with KPMG. (*See* Docs. 12–18.) Plaintiff relies on the Individual Defendants' roles in managing Plaintiff, who was ostensibly based out of KPMG's New York office, to establish that the Individual Defendants transacted business in New York. This argument falls short because Plaintiff did not live or work in New York. When Plaintiff was hired, she was assigned to KPMG's New York office and was planning to relocate to New York City from her home in Georgia. (*See* Tran Decl. ¶ 3; Pl. 56.1 ¶ 2.) However, as KPMG's Covid-19 protocols were still in effect, Plaintiff worked remotely and never relocated to New York. (Tran Decl. ¶ 5; *see also* Am. Compl. ¶ 36 ("Though Plaintiff attempted to go to her office in New York, Plaintiff was specifically advised, on multiple occasions, that she should not physically visit KPMG'S New York office due (only) to KPMG's ongoing pandemic protocols").) Other than two instances in which Plaintiff went to the New York office, she

9

worked remotely from her home in Georgia for the entirety of her tenure with KPMG. (Pl. 56.1 ¶ 1.)

The Individual Defendants' interactions with Plaintiff occurred while Plaintiff lived and worked in Georgia. Plaintiff states that she visited New York twice, but she does not allege that any of the events outlined in the Amended Complaint took place during either visit to New York, or that she interacted with any of the Individual Defendants during her visits to New York. (*See* Doc. 52, Ex. B ("Roddey Decl.") ¶¶ 19–20.) Plaintiff's intent to move to New York, coupled with the prospect of working in-person out of KPMG's New York office in the future, does not suffice to establish that Individual Defendants transacted business in New York. *Cf. Troma Ent., Inc. v. Centennial Pictures Inc.*, 853 F. Supp. 2d 326, 329 (E.D.N.Y. 2012) ("Personal jurisdiction has to be predicated on defendants' actions, not plaintiff's."). Although it is true that Plaintiff's work phone number had a New York area code and her email signature reproduced KPMG's New York office address, "courts applying New York law have declined to extend jurisdiction over defendants simply on the basis of telephone calls and other communications sent to New York." *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) (collecting cases). Here, Plaintiff's situation is even more attenuated since she neither received calls while she was in New York, nor did she physically work in New York.

In addition to Plaintiff's overarching claim that she was based out of KPMG's New York office, Plaintiff asserts that in early November, after she was told she would be given a role with the Goldman Sachs Carbon Project, Defendant Edgerton stated in an email that he was involved with the project's onboarding and requested information about when Plaintiff would be in New York. (Am. Compl. ¶ 142.) Plaintiff responded that she would be present in New York and ready to be onsite for the project. (*Id.* ¶ 143.) In mid-November, Plaintiff was informed that she

10

had not been selected for the Carbon Project position. (*Id.* ¶¶ 148–50.) Although these facts make the personal jurisdiction determination a closer call with regard to Defendant Edgerton, the email thread is insufficient to establish that Edgerton projected himself into New York to engage in a sustained and substantial transaction of business. *See Aquiline Capital*, 861 F. Supp. 2d at 386. "New York courts have held that [] exploratory meetings taking place in New York, 'leading to nothing more than a proposal that was itself the subject of further negotiations over the phone, by mail, and in meetings outside New York,' are not sufficient contacts to constitute the transaction of business." *Id*. (quoting *C–Life Group Ltd. v. Generra Co.*, 652 N.Y.S.2d 41 (1st Dep't 1997)); *accord V Cars, LLC v. Israel Corp.*, 902 F. Supp. 2d 349, 361–62 (S.D.N.Y. 2012). This scenario, where there was an email thread about a potential business transaction that would have been based in New York, but which never came to pass, is analogous, although in this case there was never even a meeting that took place in New York. In other words, aspirations to conduct business in New York do not equate to the sustained and substantial transaction of business in New York.

  Because Plaintiff fails to establish that the Individual Defendants transacted business in New York within the meaning of § 302(a)(1), she cannot establish that her claims arise from those business transactions. *Cf. Miller Inv. Tr. v. Chen*, 967 F. Supp. 2d 686, 694 (S.D.N.Y. 2013) (finding that where defendant "did not engage in purposeful activity in New York . . . personal jurisdiction cannot be established under section 302(a)(1)"). Therefore, this Court cannot exercise personal jurisdiction over the Individual Defendants pursuant to C.P.L.R. § 302(a)(1).

### 2. C.P.L.R. § 302(a)(3)[2]

A court in New York may exercise personal jurisdiction over a non-domiciliary who commits a tortious act outside of New York "causing injury to person or property" in New York, so long as the person "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3). The parties do not dispute that the "alleged discriminatory acts constitute torts within the meaning of section 302(a)." *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 77 (E.D.N.Y. 2006).

Plaintiff asserts that the alleged tortious acts of the Individual Defendants caused her injury in New York. "Courts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a 'situs-of-injury test, which asks them to locate the original event which caused the injury.'" *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999) (cleaned up)). The "original event" occurs "where the first effect of the tort that ultimately produced the final economic injury is located." *Id.* at 84–85 (internal quotation marks omitted). Plaintiff relies on *DiStefano*, where the Second Circuit found that a New York resident who "performed his employment duties in New York" for an out-of-state corporation, and was fired at a meeting in New Jersey, suffered the "original event" of being

---

[2] Defendant also argues that there is no personal jurisdiction over any Individual Defendant pursuant to C.P.L.R. § 302(a)(2), which provides for jurisdiction over a non-domiciliary who commits a tort within the state of New York. Plaintiff's Opposition does not dispute this, (*see* Doc. 50 at 10–20), and thus abandons any argument that jurisdiction lies under § 302(a)(2). *See Robinson v. New York City Dep't of Educ.*, No. 20-CV-8175, 2021 WL 4340825, at *9 (S.D.N.Y. Sept. 22, 2021) ("When a party fails to oppose a defendant's arguments in responding to that defendant's motion to dismiss, the claim at issue is deemed abandoned." (internal quotation marks omitted)).

removed from his job in New York. 286 F.3d at 85. The logic of *DiStefano* is that "when a person is employed in New York (or performs a substantial part of the duties of his or her employment in New York), his or her removal from that employment (or from those duties) is a New York event that constitutes 'the first effect of the tort' of discharging the employee." *Id*. The distinction here is that Plaintiff performed her employment duties in Georgia, not New York. By the logic of *DiStefano*, the original event of the termination of Plaintiff's employment from KPMG occurred in Georgia, not New York, as would the original event of any other instance of discrimination alleged by Plaintiff.

Plaintiff notes KPMG has its principal place of business in New York, and that key decisions, such as the termination of her employment, were funneled through that office. (Doc. 50 at 18.) Defendants do not dispute that general jurisdiction exists over KPMG. The question is whether I can properly exercise specific jurisdiction over the Individual Defendants, none of whom lived in New York or worked out of KPMG's New York office. (*See* Docs. 12–18.) Allegations about KPMG as a company do not suffice to support jurisdiction over individuals that were employed by KPMG. As Plaintiff fails to establish that the Individual Defendants committed tortious acts causing injury to a person or property in New York, I need not reach the sub-requirements of Section 302(a)(3) or the due process inquiry.

Because Plaintiff fails to sufficiently allege the existence of specific jurisdiction under either CPLR § 302(a)(1) or § 302(a)(3), Defendants' motion to dismiss Plaintiff's claims against the Individual Defendants for lack of personal jurisdiction is GRANTED.

### B. *Jurisdictional Discovery & Amendment*

Because I have found that Plaintiff fails to sufficiently allege the existence of personal jurisdiction over the Individual Defendants, Plaintiff seeks leave to (i) conduct jurisdictional

discovery and (ii) amend the First Amended Complaint. (*See* Doc. 50 at 24–25.) Defendants oppose these requests on the grounds that they are procedurally defective and futile. (*See* Doc. 53 at 9–10.)

"It is within a district court's discretion to determine whether a plaintiff is entitled to conduct jurisdictional discovery." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004). "While discovery on the jurisdictional question is sometimes appropriate when there is a motion to dismiss for lack of jurisdiction, plaintiff must first make a threshold showing that there is some basis for the assertion of jurisdiction." *Daval Steel Prods. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159, 162 (S.D.N.Y. 1989) (internal quotation marks omitted). Where a plaintiff fails to allege facts that would support a colorable claim of jurisdiction, *see id.*, or identify a genuine issue of jurisdictional fact, *see Daventree*, 349 F. Supp. 2d at 761, that plaintiff should not be entitled "to use the court processes to attempt to find support for having commenced the litigation," *Daval Steel*, 718 F. Supp. at 162 (internal quotation marks omitted). Because I find that Plaintiff fails to make a threshold showing that there is some basis for the assertion of personal jurisdiction over the Individual Defendants, Plaintiff's request for jurisdictional discovery is DENIED.

Plaintiff also seeks an opportunity to amend the First Amended Complaint to "cure any deficiencies . . . should the court require further allegations related to jurisdiction." (Doc. 50 at 25.) Although courts "should freely give leave" to amend pleadings "when justice so requires," Fed. R. Civ. P. 15(a)(2), courts need not grant leave to amend when amendment would be futile, *see Medina v. Tremor Video, Inc.*, 640 F. App'x 45, 47 (2d Cir. 2016) (summary order). Leave to amend is also inappropriate where "plaintiff['s] proposed amendments merely recycle[] versions of claims which had already fallen victim to a motion to dismiss." *Bellikoff v. Eaton Vance*

14

*Corp.*, 481 F.3d 110, 118 (2d Cir. 2007); *see also DeBlasio v. Merrill Lynch & Co.*, No. 07-CV-318, 2009 WL 2242605, at *41 (S.D.N.Y. July 27, 2009) ("Rule 15(a) is not a shield against dismissal to be invoked as either a makeweight or a fallback position in response to a dispositive motion."). Plaintiffs seeking to amend should submit "moving papers [that] explain the basis for . . . the proposed amendment," as well as copy of the proposed amended complaint, to enable "the Court to determine whether the proposed amendment would be in the interest of justice." *See Kornegay v. New York*, 677 F. Supp. 2d 653, 661 (W.D.N.Y. 2010).

Plaintiff does not state what allegations she would add to the complaint, nor does she attach a proposed second amended complaint. Absent any indication of what substantive changes Plaintiff seeks to make, I am unable to assess whether the proposed amendment meets the standard established by Rule 15(a)(2). Therefore, Plaintiff's request to amend the First Amended Complaint is DENIED without prejudice.

### C. NYSHRL and NYCHRL Claims

Defendants argue that Counts Five through Ten of the Amended Complaint, all of which arise under the NYSHRL or NYCHRL, should be dismissed because Plaintiff cannot show that the alleged misconduct occurred in New York. (*See* Doc. 35 at 19–23.) In the alternative, Defendants move for partial summary judgment on Plaintiff's NYSHRL and NYCHRL claims on the same grounds. (*See id.* at 23–25.) Plaintiff argues that Defendants' alleged discrimination and retaliation had an impact on her in New York sufficient to state a claim under NYCHRL and NYSHRL. (*See* Doc. 50 at 21–23.)

Since the parties completed briefing, there have been important developments in the case law surrounding the application of the NYCHRL and NYSHRL to nonresidents of New York.

15

On January 23, 2023, the Second Circuit certified the following question to the New York Court of Appeals:

> Whether a nonresident plaintiff not yet employed in New York City or State satisfies the impact requirement of the New York City Human Rights Law or the New York State Human Rights Law if the plaintiff pleads and later proves that an employer deprived the plaintiff of a New York City- or State-based job opportunity on discriminatory grounds.

*Syeed v. Bloomberg L.P.*, 58 F.4th 64, 71 (2d Cir. 2023), *certified question accepted*, 203 N.E.3d 630 (N.Y. 2023), *certified question answered*, 235 N.E.3d 351 (N.Y. 2024).

In *Syeed*, Plaintiff Nafeesa Syeed, a "South Asian-American woman," alleged that she was subjected to race and sex discrimination while working as a reporter in Defendant Bloomberg's Washington, DC bureau and while unsuccessfully applying for jobs in Bloomberg's New York bureau. *Syeed*, 235 N.E.3d at 352–53. At least one of the New York jobs Syeed applied for was filled by someone with less education and experience than Syeed, a decision that a manager characterized as a choice not to convert the job into a "diversity slot." *Id.* The district court dismissed Syeed's claims, relying on *Hoffman v. Parade Publications*, 933 N.E.2d 744 (N.Y. 2010), to hold that Syeed did not feel the impact of the alleged discrimination in New York while she was living in Washington, DC. *See Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021), *vacated and remanded*, No. 22-1251, 2024 WL 2813563 (2d Cir. June 3, 2024). In *Hoffman*, the New York Court of Appeals held that the city and state human rights laws protect those "who inhabit or are 'persons in' the City of New York" or, if a nonresident, an individual who felt the impact of the discriminatory conduct in New York. 933 N.E.2d at 746–47. The *Hoffman* court found that the plaintiff, who lived and worked in Georgia, but who worked for a New York-based company, attended quarterly meetings in New York, and was

16

managed from New York, did not sufficiently allege that the impact of the alleged discrimination was felt in New York, dooming his NYCHRL and NYSHRL claims. *Id.* at 748.

On March 14, 2024, the New York Court of Appeals answered the certified question, holding that "the New York City and New York State Human Rights Laws each protect nonresidents who are not yet employed in the city or state but who proactively sought an actual city- or state-based job opportunity." *Syeed*, 235 N.E.3d at 352. The Court of Appeals in *Syeed* court did not disavow *Hoffman*'s impact test. *See id.* at 355. Instead, the court distinguished a discriminatory termination case, like *Hoffman*, from a failure to hire or promote case, like *Syeed*, based on the logic that in the latter category, the "prospective employee personally feels the impact of a discriminatory refusal to promote or hire in New York City or State, because that is where the person wished to work (and perhaps relocate) and where they were denied the chance to do so." *Id.* Under *Syeed*, a prospective New York inhabitant or employee fits within the NYCHRL and NYSHRL's protection, as "the legislature and city council [could not have] intended to give New York employers a license to discriminate against nonresident prospective employees." *Id.* at 356.

Here, Roddey alleges that she suffered discriminatory treatment and retaliatory termination, as in *Hoffman*, not a failure to hire or promote, as in *Syeed*. *See Syeed*, 235 N.E.3d at 355 ("For purposes of the impact test, a failure to hire or promote case is distinct from a discriminatory termination case, like *Hoffman*."). However, that does not end the inquiry because the underlying logic of *Syeed* is that the failure to hire denied the plaintiff the opportunity to live and work in New York, which she was actively seeking to do. Here, the same is true of Roddey. On September 16, 2021, while living in Georgia, Roddey was hired to work in KPMG's New York office. (Am. Compl. ¶ 28.) KPMG instructed Roddey to work remotely for

17

an initial period due to their Covid-19 remote work policy, with the condition that she had to relocate to New York by March 27, 2022. (*Id.* ¶ 29; *see also* Tran Decl. ¶¶ 3, 5.) Roddey was actively looking to relocate to New York when her employment was terminated on January 28, 2022. (Pl. 56.1 ¶¶ 1-2; *see also* Am. Compl. ¶¶ 195, 199.) As in *Syeed*, Roddey alleges that she would have lived and worked in New York but for the discriminatory acts.

At least one district court has addressed whether *Syeed*'s holding should encompass a discriminatory termination case where the plaintiff was denied the opportunity to work in New York. In *Shiber v. Centerview Partners LLC*, the plaintiff began working remotely for the defendant company from her home in New Jersey due to the Covid-19 pandemic, but she understood that she would be required to work in-person in the New York City office once the pandemic policy was lifted. No. 21-CV-3649, 2024 WL 3274420, at *3 (S.D.N.Y. July 2, 2024). Her employment was terminated while the remote work policy was still in effect, and she brought a discriminatory termination claim under the NYCHRL and NYSHRL. *See id*. The court held that "there is no reason to conclude that New York employers should be permitted to discriminate against an employee . . . who was terminated before she had the chance to work in New York and who would have worked in New York but for the termination." *Shiber*, 2024 WL 3274420, at *4; *accord Shaughnessy v. Scotiabank*, No. 22-CV-10870, 2024 WL 1350083, at *9 (S.D.N.Y. Mar. 29, 2024); *eSHARES, Inc. v. Talton*, No. 22-CV-10987, 2025 WL 936921, at *16 (S.D.N.Y. Mar. 27, 2025).

As in *Shiber*, Roddey would have been required to work in-person from KPMG's New York office once their Covid-19 remote work policy was lifted. Thus, Roddey was denied the opportunity to live and work in New York by KPMG's alleged discrimination, including the termination of Roddey's employment. I agree with the *Shiber* court's finding that under *Syeed*,

18

this demonstrates an impact in New York sufficient to state a claim under the state and city human rights laws. Because I find KPMG's actions have sufficient impact in New York to state a claim under the state and city human rights laws, Defendants' motion to dismiss Plaintiff's NYSHRL and NYCHRL claims is DENIED. Defendants' motion for summary judgment on Plaintiff's NYSHRL and NYCHRL claims is likewise DENIED.[3]

### V. Conclusion

Defendants' motion to dismiss Plaintiff's claims against Sabrina Donnelly, Jonathan Edgerton, Julie Molitor, Jonathan Wyatt, Yvonne Garcia, Timothy Phelps, and Allison Sumrow for lack of personal jurisdiction is GRANTED. Defendants' motion to dismiss or in the alternative, motion for summary judgment, as to Plaintiff's NYCHRL and NYSHRL claims is DENIED. Plaintiff's requests to conduct jurisdictional discovery and amend her First Amended Complaint are DENIED.

The Clerk of Court is respectfully directed to terminate the motion pending at Doc. 34.

SO ORDERED.

Dated: April 14, 2025
       New York, New York

Vernon S. Broderick
United States District Judge

---

[3] The NYCHRL and NYSHRL claims cannot go forward against the Individual Defendants because this Court lacks personal jurisdiction over them, *see supra* § IV.A.